# CV 13        4709

CV.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

JOHN F. GANGEMI,

                                Plaintiff,       MATSUMOTO, J.

        -against-

                                       POLLAK, M.J

BOARD OF ELECTIONS IN THE CITY OF NEW YORK,
      :

                                Defendant
----------------------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
INJUNCTIVE AND DECLARATIVE RELIEF


----------------------------------------------------------------------X



Dated:    Brooklyn, N.Y.
             August 20, 2013


                            Respectfully submitted:

                            JOHN F. GANGEMI PLLC
                            Attorney Pro Se/Plaintiff
                            9920 Fourth Avenue, Suite 307
                            Brooklyn, New York 11209
                            (718) 234-2244

0

TABLE OF CONTENTS

I. STATEMENT OF FACTS.................................................................2

II. DISCUSSION..............................................................................6

A.   THE APPLICABLE DUE PROCESS STANDARD UNDER *RIVERA-POWELL v. BOARD OF ELECTIONS*.................................................6

B.   DEFENDANT CANNOT OVERCOME OR DISTINGUISH THE HOLDING IN *MULLANE V. CENTRAL HANOVER BANK & TRUST CO.* IN ITS USE OF A NON-SPECIFIC AND GENERIC PUBLIC NOTICE FOR A PRE-DEPRIVATION MEETING WHEN IT SPECIFICALLY KNEW PLAINTIFF WAS AN AFFECTED PARTY..........................12

C.   DEFENDANT PROVIDED PLAINTIFF WITH NO NOTICE AND OPPORTUNITY TO ADDRESS ALLEGED NEW PRE-DEPRIVATION COVER SHEET DEFECTS AFTER PLAINTIFF FULLY COMPLIED WITH THE ONLY PRIOR NON-COMPLIANCE NOTICE DEFENDANT SENT TO PLAINTIFF......................................................17

D. PLAINTIFF MEETS THE LEGAL STANDARD FOR GRANT OF INJUNCTIVE RELIEF......................................................21

i. Plaintiff Meets Probability of Success on the Merits......................21
ii. Plaintiff Amply Demonstrates Irreparable Harm..........................22

CONCLUSION.............................................................................24

I. STATEMENT OF FACTS

Plaintiff-Candidate filed Petitions with a Cover Sheet on July 10, 2013 for his candidacy for Brooklyn Borough President for the Democratic Primary on September 10, 2013. On July 11, 2013, Plaintiff filed an Amended Cover Sheet with additional Petitions.

On July 13, 2013, Plaintiff received notification from the Board of Elections that he had qualified as candidate for the Democratic Party primary to be held on September 10, 2013 for the Office of Brooklyn Borough President.

On July 15, 2003, the Board of Elections sent Plaintiff a Non-Compliance Notice, wherein of the 16 potential categories provided, the alleged defect was solely and exclusively a claim that Petition (KG1301124) was not a filed volume.

On July 17, 2013, in response to the July 15, 2013 Non-Compliance Notice, Plaintiff filed a Second Amended Cover Sheet fully complying with the Notice by removing the unfiled volume. However, the Second Amended Cover Sheet claimed an additional volume (KG1301377) that Plaintiff had discovered, which contained 77 signatures for his candidacy.

On July 19, 2013, the Board of Elections issued a notice to Plaintiff indicating he will not appear on the ballot since the Amended Cover Sheet

did not comply with the Election Law and Rules because it allegedly:

    a) did not contain the authentication required by Rule C4; and

    b) Candidate claimed Petition Volume on which he did not appear.

The July 19, 2013 Notice was generated pursuant to Rule D6, which states that such a letter will be issued in response to a failed attempt to cure a notice of non-compliance. However, the sole defect from the sole non-compliance letter, dated July 15, 2013, was cured by the July 17, 2013 Second Amended Cover Sheet.

Under the explicit language of Rule D6, the July 19, 2013 Notice had to be a determination that the Candidate was not in compliance with the previous Notice of Non-Compliance. The July 19, 2013 Notice was not such a determination because it relied on matters not in the July 15, 2013 Non-Compliance. Plaintiff considered the July 19, 2013 Notice to be null and void under the Election Law and the Rules of the Board of Elections.

The July 19, 2013 Notice was the first time that the Board indicated an Amended Cover Sheet did not contain the proper authentication language and no notice to cure or notice of non-compliance was provided by the Board of Elections to Candidate on this issue. The July 15, 2013 Non-Compliance Notice failed to indicate this deficiency and the First Amended Cover Sheet and Second Amended Cover Sheet both have the same form

and language. There is a specific provision (#12) in the standard Non-Compliance Letter, which was not checked on July 15, 2013. Candidate relied on the lack of notice in the July 15, 2013 Non-Compliance Notice in failing to add the certification language to the Second Amended Cover Sheet.

The July 19, 2013 Notice was the first and only time that the Board indicated that Volume KG1301377 was a Petition Volume that Candidate's name does not appear and no notice to cure or notice of non-compliance was provided by the Board of Elections to Candidate on this issue as required by Election Law section 6-134(2)(d)(2) &(3).

In fact, Plaintiff's name does appear in Volume KG1301377 on 10 pages (pages 137 to 144 and 151 to 152 therein) of that volume and the Board of Elections' assertion was otherwise erroneous.

Plaintiff was not provided with adequate and sufficient notice and opportunity to appear and be heard on the issue of the deprivation of his position on the ballot for the public office of Brooklyn Borough President. The July 19, 2013 meeting of the Cover Sheet Review Committee that made the determination was made at a general Public Meeting Notice on one day notice without indication of an opportunity to be heard or any specific notation as to who was to be on notice of any deprivation

Notwithstanding the failure of the Board of Elections to provide Notice of Non-Compliance pursuant to Election Law 6-134(2)(d)(2) &(3), on July 24, 2013, within 3 (three) business days of receipt of the July 19, 2013 Notice, Plaintiff submitted a letter with exhibits explaining his position and requesting acceptance of a further conforming Amended Cover Sheet.

Notwithstanding failure of the Board of Elections to provide Notice of Non-Compliance pursuant to Election Law 6-134(2)(d)(2) &(3), on July 24, 2013, within 3 (three) business days of receipt of the July 19, 2013 Notice, Plaintiff filed a Third and Fourth Amended Cover Sheet (nearly simultaneously with the Fourth covering an omission in the Third), that provided the added certification language and provided clarification of the page numbers for the signatures in Volume KG1301377.

The Board of Elections failed to respond or otherwise deal with the request made by Plaintiff on July 24, 2013. The Board of Elections failed to reject or otherwise deal with the Fourth Amended Cover Sheet filed by Plaintiff on July 24, 2013.

The Board, through its General Counsel's Office, by email of June 22, 2013, conceded that there was no procedure for obtaining a review of this erroneous determination. However, General Counsel indicated that Plaintiff could seek recognition before the Board to seek review of the determination.

On July 31, 2003, Plaintiff appeared before the Board of Elections and argued the above facts for reconsideration of the prior final determination, whereupon the Board of Elections voted and determined unanimously to adhere to the prior decision that Candidate will not appear on the ballot solely on a determination that Plaintiff's Second Amended Cover Sheet was defective[1]. The July 31, 2013 Notice of Hearing was specific as its agenda and who would be heard and indicated that there would be an opportunity to be heard with such Hearing is also noticed on the first page of the rulebook handed to each candidate at the Board of Elections,

Plaintiff commenced action in New York Supreme Court, Kings County, to validate his Petition, but was denied by Order of Justice David I. Schmidt on June 8, 2013. Plaintiff sought review in the Appellate Division of Supreme Court, which Court affirmed by Order of August 14, 2013.

---

[1] Objector Respondents had also filed Specifications claiming that Petitioner did not have the requisite 2,000 signatures necessary for the Office sought. The Board did not reach that issue. The Board's Report indicated that it found 1,807 valid signatures. At the July 31, 2013 hearing before the Board, Petitioner indicated that it had identified approximately 450 signatures that were wrongfully excluded because of alleged unregistered subscribing witnesses, who were in fact registered. Those 450 signatures would have brought Petitioner to approximately 2,257 signatures, which would bring Petitioner over the necessary minimum number, even before a line-by-line analysis was undertaken. Clearly, aside from the technicalities in the Cover Sheet, Petitioner otherwise qualified for the ballot and, on remand, the issue will be borne out.

## II. DISCUSSION

### A.   THE APPLICABLE DUE PROCESS STANDARD UNDER *RIVERA-POWELL v. BOARD OF ELECTIONS*

It is well established that The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, "only against deprivations without due process of law." *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (internal quotation marks omitted), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

As the Second Circuit explained in *Hellenic American Neighborhood Action Committee v. City of New York* ("*HANAC*"), in evaluating what process satisfies the Due Process Clause, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." 101 F.3d 877, 880 (2d Cir.1996) (citing *Hudson v. Palmer,* 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and Parratt, 451 U.S. at 541, 101 S.Ct. 1908). When the state conduct in question is random and unauthorized,

7

the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. *Id.; see Hudson,* 468 U.S. at 533, 104 S.Ct. 3194 (explaining that when deprivations are "random and unauthorized . . . pre-deprivation procedures are simply impracticable since the state cannot know when such deprivations will occur" (internal quotation marks omitted)). In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. *HANAC,* 101 F.3d at 880; *Parratt,* 451 U.S. at 541, 101 S.Ct. 1908. Under those circumstances, "the availability of post-deprivation procedures will not, *ipso facto,* satisfy due process." *HANAC,* 101 F.3d at 880.[7]

In *Zinermon v. Burch,* the Court held that government actors' conduct cannot be considered random and unauthorized within the meaning of *Parratt* if the state delegated to those actors "the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law," even if the act in question "was not . . . sanctioned by state law." 494 U.S. at 138, 110 S.Ct. 975. The acts of high-ranking officials who are "ultimate decision-maker[s]" and have "final authority over significant matters," even if those acts are contrary to law, should not be considered "random and unauthorized"

8

conduct for purposes of a procedural due process analysis. *Velez v. Levy,* 401 F.3d 75, 91-92 & nn. 14 & 15 (2d Cir.2005) (internal quotation marks omitted); *see also DiBlasio v. Novello,* 344 F.3d 292 (2d Cir.2003).

Here, the Board of Elections has been delegated the authority to make the kind of deprivation at issue here—the removal of candidates from the ballot. *See* N.Y. Elec. Law § 6-154. On this finding, that the Board's decision was part of an established state procedure, such that the availability of a post-deprivation remedy would not *automatically* satisfy due process, we must determine what process was due. *See Locurto v. Safir,* 264 F.3d 154, 172 (2d Cir.2001). In doing so, the Court must balance three factors.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In *Rivera-Powell v. Board of Elections,* 470 F.3d 458 (2d Cir., 2006), the Second Circuit Court of Appeals applied the above precedents to a claim by a candidate for the New York City Civil Court who had been removed from

9

the ballot after a full Board of Elections hearing over a cover sheet and minimum qualifying signatures issues. The Court held that Rivera-Powell received the requisite due process when the Board removed her from ballot after a full hearing in front of the entire Board. The Court analyzed her claim under the pre-/post-deprivation holdings described above and concluded that under either a random/unauthorized act or established state procedure, Rivera-Powell received due process. *Id.*

Although the *Rivera-Powell* Court chose not to determine whether random/unauthorized acts or established state procedure were at the crux of the claim, the Court did state that it did not agree with the Board's argument that the decision was random/unauthorized because the ultimate decision makers were the ones making the decision pursuant to an established state practice. *Id.* In the instant matter, Plaintiff clearly asserts only the established state practice prong and falls within the established state practice and, therefore, is entitled to some form of pre-deprivation notice and opportunity.

Rivera-Powell received a pre-deprivation hearing in front of the full Board pursuant to a detailed Public Notice indicating an opportunity to be heard, a clear notation of the meeting's existence on the first page of the Designating Petition Rules and a Clerk's Report indicating she did not meet

the minimum number of signatures for the office. This contrasts with Plaintiff's situation where notice of the Cover Sheet Review Committee meeting was a generalized Public Notice that does not reference an opportunity to be heard, is made on one day's notice, is not referenced in any non-compliance notice and is held pursuant to a maze of rules that one would be required navigate in order to determine whether one might be affected at such meeting.

B.     DEFENDANT CANNOT OVERCOME OR DISTINGUISH THE
HOLDING IN *MULLANE V. CENTRAL HANOVER BANK & TRUST CO.*
IN ITS USE OF A NON-SPECIFIC AND GENERIC PUBLIC NOTICE
FOR A PRE-DEPRIVATION MEETING WHEN IT SPECIFICALLY
KNEW PLAINTIFF WAS AN AFFECTED PARTY.

The most significant challenge to the constitutional validity of notice by
publication was raised in *Mullane v. Central Hanover Bank and Trust
Co.*2339 U.S. 306 (1950). A New York statute authorized the trustee to give
notice by publication of impending judicial settlements of common trust
fund accounts. The Supreme Court held that notice by publication did not
fulfill the requirements of due process in regard to beneficiaries with present
interests whose addresses were known to the trustee. 339 U.S. at 318. Such
notice was held not to be "reasonably calculated to reach interested parties."
339 U.S. at 315. The Court reasoned that a better alternative, the mails, was
available, and that this method was more apt to give interested parties
"actual" notice.339 U.S. 306 at 319. The Court acknowledged that the notice
given was sufficient to beneficiaries whose interests or addresses were
unknown to the trustee.339 U.S. at 318.

*Mullane* represents a crystal clear holding by the Supreme Court on the
question of the constitutional sufficiency of alternative forms of constructive
service of notice. The Court squarely held that the means most likely to give
actual notice of the proceeding is the minimum standard required by the

12

fourteenth amendment. 339 U.S. at 315. The Court held that notice by publication does not meet this standard when a party's address is known, as the mails are more certain to afford actual notice. Id.

Clearly, then, public notice can only be used for unknown persons who are potential deprivees.   Where the potential deprivees are known, the Supreme Court has consistently held that service by mail is ordinarily sufficient. *Tulsa Prof'l Collection Servs. Inc. v. Pope*, 485 U.S. 478 (1988), *Mullane*, 339 US at 315.   Lower federal courts have upheld notice by fax transmission in a variety of contexts, *Wilkens v. Johnson*, 238 F.3d 328 (5th Cir. 2001); *St. Joseph Lease Capital Corp. v. Comm'r*, 235 F.3d 886(4th Cir. 2000); *In re Virtual Vision, Inc.,* 124 F.3d 1140 (9th Cir. 1997), and by email where a foreign defendant was not subject to service of process using traditional means within the United States. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002); *In re Int'l Telemedia Assocs.*, 245 B.R. 713 (Bankr. N.D. Ga. 2000).

The non-compliance notice of July 15, 2013 is deficient for pre-deprivation due process notice purposes because it failed to put Plaintiff on notice that he had to appear or could appear at a hearing to be heard on the non-compliance issue once an attempt to cure by filing an amended cover sheet was accomplished. In other words, the non-compliance notice is not a

notice that addresses deprivation. Certainly, it does not address anticipatory or future potential defects. If Defendant wanted to address such a contingency, it would have been easy and no real additional cost for defendant to add such additional language to the non-compliance notice.

Instead, it seems that Defendant relies on a public notice of a general meeting as the basis for obtaining appearances at the pre-deprivation hearing, such notice not being specific as to who should appear because she/he is in danger of being deprived of a right to appear on the ballot. Indeed, defendant publishes no agenda and gave **only one-day notice** for the hearing that might have pertained to Plaintiff. The Meeting Notice is denoted as a public notice and posted in the Board of Elections and somewhere on the website. Defendant presumably relies on a candidate having to work his/her way through Rule D2 to Rule D3 to Rule D6 and then back to Rule D2 in order to figure out that there **may** be a hearing and that he/she might be in peril- certainly the public notice on its face does not indicate this potential peril.  While actual receipt of a notice of deprivation is not required, *Dusenberry v, United States*, 534 U.S. 161 (2002), it is abundantly clear that a methodology of notification must still be one that is reasonably calculated to reach a potential deprivee. *Jones v. Flowers,* 547 U.S. 220 (2006).

The public notice fails on its own here under *Mullane* because Defendant knew where to find Plaintiff and the methodology of using a notice of a non-specific nature coupled with an attenuated non-compliance notice, which does not reference deprivation or a potential hearing, along with the convoluted trek through the "D" rules to determine potential peril. It is abundantly clear that Plaintiff did not receive notice calculated to reach him and an opportunity to heard about being deprived of a position on the ballot.

Contrast the operative **public meeting notice** herein for Petition and Cover Sheet Review on July 19, 2013 with the **public hearing notice** on for designating petitions and related matters for July 31, 2013. The cover sheet public notice is absolute non-specific, just giving date, time and place along with the sitting Commissioners, whereas the designating petition public hearing presents an agenda and types of matters being heard, along with date time and place, as well as an apprisal of the right to be heard.  The persons with designating petition problems on July 31, 2013 can absolutely discern that they should be at that public meeting if there is any question about their petitions, but the persons who may be interested in the July 19, 2013 have no way to know they should be present other than a guess based on a non-specific and uninformative non-compliance notice coupled with a tortured

15

and confusing reading of the "D" rules and a generic and indefinite public notice.

It would have been exceedingly easy for Defendant to have inserted notice and opportunity language in the first non-compliance notice or Rule D6 or in the Notice of Meeting for July 19, 2013, just as appears in the Notice of Hearing for July 31, 2013. Therein lies the difference between the process Rivera-Powell received and that which Plaintiff did not receive.

Therefore, under the clear holding of *Mullane*, Defendant failed to provide Plaintiff with an adequate and sufficient notice calculated to provide Plaintiff with notice of potential deprivation.

16

C.   DEFENDANT PROVIDED PLAINTIFF WITH NO NOTICE AND OPPORTUNITY TO ADDRESS ALLEGED NEW PRE-DEPRIVATION COVER SHEET DEFECTS AFTER PLAINTIFF FULLY COMPLIED WITH THE ONLY PRIOR NON-COMPLIANCE NOTICE DEFENDANT SENT TO PLAINTIFF

The Board of Elections sent Plaintiff only one non-compliance notice, dated July 15, 2013, addressing one item in Plaintiff's First Amended Cover Sheet. The Notice indicated two things at the bottom: 1) "This defect may be cured within three (3) business days of the date of this letter by the filing of an amended cover sheet. Amended cover sheets must be **filed in person only** at the Executive Office, 32 Broadway, 7th Floor, Borough of Manhattan, New York"; and (2) failure to file the amended cover sheet within the three (3) day period shall be a **FATAL DEFECT**"(emphasis in original). The notice says nothing about a hearing and was not a notice calculated to address a deprivation.

Plaintiff fully complied with the details of such non-compliance notice, but also claimed an addition volume in its Second Amended Cover Sheet. The Board then made a determination at a purported Public Meeting. The Board cited two deficiencies, lack of certification language, the same language it allowed in a previous notice and the fact that Plaintiff claimed a new volume in which the Board claimed it did not appear. These alleged deficiencies are curable under the Rules and Statutes governing Defendant.

17

Plaintiff was **not given** an opportunity to correct or explain these previously unnoticed deficiencies before it was deprived of having his name appear on the ballot. This Public Meeting was scheduled by public notice **only** and on one day's notice, with no specific notice to Plaintiff or any other party in danger of being deprived of a position on the ballot. The Board treated the prior non-compliance notice, which had been fully complied with, like it was a notice of a defect that had not yet happened. This is a violation of due process.

Applying this analysis, first, it is abundantly clear that Plaintiff did not receive at least some form of pre-deprivation hearing regarding the Second Amended Cover Sheet on July 19. Plaintiff fully complied and cured the deficiency in the First Amended Cover Sheet. However, Plaintiff was not afforded notice and an opportunity to be heard on new matters that arose out of the Second Amended Cover Sheet; indeed, Plaintiff's letter of July 24, 2013 voiced this deficiency, provided all the relevant information addressing the issue and filed a further "curative" Amended Cover Sheet. Case law in analogous contexts suggests that such a hearing must have the essential requirements of due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545-46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (stating in the employment context that a pre-termination hearing "need not be elaborate"

so long as it provides "[t]he essential requirements of due process," which are "notice and an opportunity to respond").

The failure of the Board to provide an opportunity to be heard on the determination of July 19, 2013 and deeming such determination a final determination without a pre-deprivation hearing is a violation of procedural due process. The lack of a minimal pre-deprivation hearing is not "saved" by a post-deprivation special proceeding under New York Election Law section 16-102, which provides for expedited proceedings as to designations. It is the combination of these two procedures that satisfies due process. *See Locurto,* 264 F.3d at 173-75 (finding that, when terminated employees alleged that the administrative procedures leading to their termination were biased and contrary to law, due process was satisfied by a "minimal" hearing followed by a "wholly adequate post-deprivation" Article 78 hearing); *N.Y. State NOW v. Pataki,* 261 F.3d 156, 168-69 (2d Cir.2001) (requiring courts to consider the availability of Article 78 proceedings in determining whether the state has provided procedural due process); *see also Loudermill,* 470 U.S. at 547-48, 105 S.Ct. 1487 (concluding in the employment. context that "all the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures as provided by [state] statute"); *Bello v. Walker,* 840 F.2d 1124, 1128 (3d

19

Cir.1988) ("[A] state provides adequate due process when it provides reasonable remedies to rectify a legal error by a local administrative body." (internal quotation marks omitted)), *overruled on other grounds* by *UA Theatre Circuit v. Twp. of Warrington,* 316 F.3d 392, 394 (3d Cir.2003).

Defendant has argued throughout the prior proceedings that the two new defects, although raised for the first time, are not curable and somehow serve to render an otherwise sufficient cure as insufficient because the rules cannot contemplate any other possible scenario. This "one bite at the apple" argument effectively creates a rule that does not exist, yet used as a basis for deprivation. This non-existent rule necessarily states that an otherwise satisfactory cure will be voided if such an attempted cure raises another defect. Obviously, if the Board wanted such a Rule to apply to all candidates, it could have published a Rule stating this. Instead, the Board wants candidates to be charged with notice of such a Rule by inference. Deprivation by inference on its face violates due process.

Therefore, Defendant failed to provide Plaintiff with any notice or opportunity to address the alleged new defects pre-deprivation after Plaintiff fully complied with the only non-compliance notice Defendant sent to Plaintiff.

20

## D. PLAINTIFF MEETS THE LEGAL STANDARD FOR GRANT OF INJUNCTIVE RELIEF

"A party seeking a preliminary injunction must demonstrate: (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 116 (*2d Cir. 2009) (internal quotation marks omitted). In performing this analysis courts must be mindful that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 377 (2008).

### i. Plaintiff Meets Probability of Success on the Merits

Defendant's procedures herein are absolutely deficient with regard to pre-deprivation notice and opportunity to be heard. With regard to the process provided to Plaintiff, notice and opportunity was constitutionally deficient as a matter of fact, law and equity under *Mullane v. Central Hanover Bank and Trust* Co. 339 U.S. 306 (1950) in Defendant's reliance on a generic and unspecified public notice to apprise known potential deprivee of deprivation, see Point B and C, *supra,* and in its abject failure to provide any notice and opportunity with regard to new and spontaneous defects

21

alleged after full compliance with a prior non-compliance notice, see Points A and C, *supra*. Plaintiff will clearly prevail on the merits.

   ii. Plaintiff Amply Demonstrates Irreparable Harm

   "To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley*, 559 F.3d at 118 (internal quotation marks omitted). In this analysis "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger*, 607 F.3d at 81; see also *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) ("[I]t would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of

business in years to come."); *Tom Doherty Assocs. v. Saban Entertainment, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) ("[I]rreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial.").

In the instant action, the denial of injunctive relief would cause Plaintiff to suffer irreparable injury because he would miss participation in the Democratic primary election on September 10, 2013 for this county/borough-wide position, for which there is only one other candidate and no incumbent participating. As of this date of filing, there are three weeks until the primary election. There must be an expeditious determination on the merits, and an injunction is warranted to prevent irreparable and imminent harm to Plaintiff. The nature of appearing on the ballot and participating in this aspect of the democratic process is unique and the passage of time beyond the primary election date would render an ultimate determination in Plaintiff's favor hollow and impractical should injunctive relief not be granted.

CONCLUSION

Defendant has violated Plaintiff's right to due process in denying a pre-deprivation hearing in conformance with the United States Constitution under the Fifth and Fourteenth Amendments and is entitled to an injunction enjoining Defendant from printing a ballot excluding Plaintiff's name as a candidate  for President of the Borough of Brooklyn in the City of New York for the Democratic Primary Election to be held on September 10, 2013

WHEREFORE, Plaintiff respectfully requests that this honorable Court be enjoined from printing any ballots excluding Plaintiff from the Office of President of the Borough of Brooklyn in the City of New York and such other and further Court deems just and necessary under the circumstances.

Dated:   New York, N.Y.
         August 20, 2013

                                      Respectfully submitted:

                                      JOHN F. GANGEMI PLLC

                                      BY: _____
                                             John F. Gangemi
                                      Attorney Pro Se/Plaintiff
                                      9920 Fourth Avenue, Suite 307
                                      Brooklyn, New York 11209
                                      (718) 234-2244

TO:  BOARD OF ELECTIONS IN THE CITY OF NEW YORK
     Respondent
     32-42 Broadway
     New York, New York 10004

24